### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

| | |
|---|---|
| Lishu Yin,                         ) | Civil Action No. 3:15-cv-03656-JMC |
|          ) | |
|        Plaintiff,      ) | |
| v.                         ) | |
|          ) | **ORDER AND OPINION** |
| Columbia International University,    ) | |
|          ) | |
|      Defendant.     ) | |
| _____ ) | |

Plaintiff Lishu Yin ("Plaintiff") filed this action pro se against her former employer, Defendant Columbia International University ("Defendant"), alleging that she was subjected to discrimination based on her race, sex, and national origin and retaliation, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17.  (ECF No. 1 at 36.)  Plaintiff also alleges a claim for pay discrimination in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), and defamation under state law.  (Id.)

This matter is before the court on Defendant's Motion to Dismiss (ECF No. 20) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and/or Motion to Strike (id.) pursuant to Rule 12(f).[1]  Defendant moves for dismissal on the basis that Plaintiff's claims are barred by the ministerial exception, which is a First Amendment doctrine that precludes claims brought by ministers of a church.  (ECF No. 20-1 at 9–10.)  In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to United States Magistrate Judge Paige J. Gossett for pretrial handling.  On April 11, 2016, the Magistrate Judge issued a Report and Recommendation in which she recommended that the court grant Defendant's Motion to Dismiss Plaintiff's claim for defamation, but deny the Motion to Dismiss Plaintiff's Title VII and EPA claims and the Motion to Strike.  (ECF No. 40 at 19.)  Both Plaintiff and Defendant filed

---

[1] The court observes that "Rule" refers to the Federal Rules of Civil Procedure.

Objections to the Magistrate Judge's Report and Recommendation, which Objections are presently before the court. (ECF Nos. 43, 44.) For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's recommendation and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss and **DENIES** Defendant's Motion to Strike.

## I.     RELEVANT BACKGROUND TO PENDING MOTION

The facts of this matter are discussed in the Report and Recommendation. (See ECF No. 40 at 1–6.) The court concludes, upon its own careful review of the record, that the Magistrate Judge's factual summation is accurate and incorporates it by reference. The court will only reference herein facts viewed in the light most favorable to Plaintiff that are pertinent to the analysis of her claims.

Founded in 1923, Defendant is a private, multi-denominational Christian institution of higher education located in Columbia, South Carolina. CIU, https://en.wikipedia.org/wiki/Columbia_International_University (last visited Sept. 22, 2016). Defendant offers a variety of degrees including a Graduate Certificate in Teaching English as a Foreign Language ("TEFL") and a Master of Arts in Teaching English to Speakers of Other Languages ("TESOL"). Id.

Plaintiff, an Asian-American, has a Doctor of Philosophy in curriculum and instruction with a minor in instructional technology from Mississippi State University. (ECF No. 1-2 at 1.) On July 1, 2008, Defendant hired Plaintiff as a full-time resident faculty member for the TEFL program. (ECF No. 1 at 8.) Beginning in March 2011, Plaintiff alleges she started having problems with white faculty members who excluded her from TEFL program meetings, changed the TEFL curriculum, and gave away two of Plaintiff's courses to less qualified white individuals. (Id. at 8–9 ¶ 3.) On April 4, 2011, Plaintiff alleges that she complained to two individuals, Dean Dr. Milton Uecker and Dr. Connie Mitchell. (Id. at 9 ¶ 4.) "With tears, . . .

[Plaintiff] addressed to both Uecker and Mitchell that the reason she was mistreated was because of her race and national origin." (Id.)

On April 11, 2011, Dr. Uecker told Plaintiff about the creation of the new TESOL program in the College of Education. (Id. at 10 ¶ 5.) After transferring from the TEFL program, Plaintiff served as a "major professor of TESOL." (Id.) Soon thereafter, Dr. Uecker resigned and Dr. Mitchell became the Dean of the College of Education. (Id.) Plaintiff alleges that once Dr. Mitchell became dean, she began mistreating Plaintiff. (Id.)

On March 22, 2012, Dr. Mitchell told Plaintiff about a proposed merger of the TESOL and TEFL programs. (Id. at ¶ 7.) Plaintiff alleges that she was inappropriately excluded from the merger planning meetings. (Id.) On April 10, 2012, Defendant's Provost Jim Lanpher told Plaintiff that a final decision on the merger had not occurred. (Id. at ¶ 8.) Plaintiff alleges that Defendant "placed misleading statements in the Graduate Programs Academic Catalog to confuse prospective students and lure them into the TEFL program, and away from . . . [Plaintiff's] TESOL program, which at the time was enjoying better enrollment." (ECF No. 40 at 3 (referencing ECF No. 1 at 11 ¶ 10).)

On March 1, 2013, Defendant offered Plaintiff a contract that contained language requiring her to "agree to waive her right to a civil trial . . . ." (ECF No. 1 at 12 ¶ 11.) "In the spring of 2013, the College of Education . . . hired two new faculty members, both white, despite having a budget for only one new faculty member." (ECF No. 40 at 3 (referencing ECF No. 1 at 12 ¶ 14).) Plaintiff alleges that "[f]rom this point on, Mitchell began to publically and privately humiliate, threaten, and mistreat . . . [Plaintiff], the only female minority professor/employee in the College of Education." (ECF No. 1 at 12 ¶ 14.) "On September 20, 2013, at the end of a Dissertation Committee meeting, Dr. Mitchell dismissed . . . [Plaintiff] from the committee in

front of its other members."  (ECF No. 40 at 4 (referencing ECF No. 1 at 13 ¶ 15).)  "Dr. Mitchell stated that . . . [Plaintiff] was no longer needed because the two newly hired faculty members could take her place."  (Id.)

On September 30, 2013, Plaintiff met with Dr. Mitchell for Plaintiff's annual faculty evaluation.  Plaintiff describes her meeting with Dr. Mitchell as follows:

> Mitchell revenged . . . [Plaintiff] by writing untruthful statements on . . . [Plaintiff's] faculty evaluation regarding the working relationship with TEFL . . . [Plaintiff] refused to sign the evaluation form and requested Mitchell to give a specific example.  Mitchell yelled at . . . [Plaintiff] and threatened her, 'if you don't sign it, you will see what [Provost] Jim Lanpher will do to you.'  After she slammed . . . [Plaintiff's] door and left, a . . . [Defendant's] employee walked into . . . [Plaintiff's] office and saw . . . [Plaintiff] tearing up at her desk . . . . [Plaintiff] told him that she did not want to work there anymore.  He prayed for . . . [Plaintiff].

(ECF No. 1 at 13 ¶ 16.)

On October 2, 2013, Plaintiff alleges that she complained about mistreatment received based on her sex, race, and national origin to Provost Lanpher.  (ECF No. 1 at 5, 13–14.)   On January 23, 2014, Plaintiff learned from Dr. Mitchell that Defendant was not going to renew her contract and was eliminating the TESOL program.  (Id. at 15–16 ¶ 24.)  On February 6, 2014, Defendant's President, William H. Jones, sent correspondence to Plaintiff officially acknowledging her termination as follows:

> It is with sadness that I inform you that your appointment to the position of Program Director for the Master of Arts in Teaching English to Speakers of Other Languages (TESOL) program will not be renewed for the fiscal year 2014–2015, and you will not be offered a faculty contract.  As the Dean of the College of Education Dr. Connie Mitchell explained to you on January 23, 2014 the MA TESOL program is being eliminated.  As a result, your employment with Columbia International University (CIU) will end on June 30, 2014.

(ECF No. 1-2 at 81.)

After learning about the termination of her employment, Plaintiff filed a Charge of Discrimination (the "Charge") with the United States Equal Employment Opportunity

3:15-cv-03656-JMC-PJG     Date Filed 09/26/16     Entry Number 66     Page 5 of 14

Commission ("EEOC") and the South Carolina Human Affairs Commission ("SCHAC") on May 15, 2014. (ECF No. 1-2 at 39.) In the Charge, Plaintiff alleged that she was discriminated against because of her race, sex, and national origin and retaliated against in violation of Title VII. (Id.) After receiving notice of the right to sue from the EEOC as to the Charge, Plaintiff filed an action in this court on September 11, 2015, alleging claims for race, sex, national origin, and pay discrimination, retaliation, and defamation. (ECF No. 1 at 35.) In response to Plaintiff's Complaint, Defendant filed its Motion to Dismiss and/or Motion to Strike on November 9, 2015. (ECF No. 20.) Plaintiff filed her Response in Opposition to the Motion to Dismiss on January 11, 2016, to which Defendant filed a Reply Brief on January 22, 2016. (ECF Nos. 30, 32.) Thereafter, on January 26, 2016, Plaintiff filed a Response to Defendant's Reply Brief. (ECF No. 33.)

In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 D.S.C., the Magistrate Judge issued the aforementioned Report and Recommendation on April 11, 2016. (ECF No. 40.) On April 28, 2016, the parties each filed Objections to the Magistrate Judge's Report and Recommendation. (ECF Nos. 43, 44.) Plaintiff filed a Reply to Defendant's Objections to Report and Recommendation on May 3, 2016. (ECF No. 47.) Defendant filed a Reply to Plaintiff's Response to Defendant's Objections on May 13, 2016, and a Response to Plaintiff's Objections on May 16, 2016. (ECF Nos. 49, 50.) On May 23, 2016, Plaintiff filed Sur-Replies to Defendant's Reply to Plaintiff's Response to Defendant's Objections and to Defendant's Response to Plaintiff's Objections. (ECF Nos. 53, 54.)

## II.     JURISDICTION

This court has jurisdiction over Plaintiff's Title VII and EPA claims via 28 U.S.C. § 1331, as they arise under a law of the United States, and also via 42 U.S.C. § 2000e-5(f)(3) and

5

29 U.S.C. § 216(b), which empower district courts to hear claims brought under Title VII and § 206 of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201–219, respectively. The court may properly hear Plaintiff's state law claim for defamation based on supplemental jurisdiction since this claim is "so related to claims in the action within such original jurisdiction that . . . it form[s] part of the same case or controversy . . . ." 28 U.S.C. § 1367(a).

### III.    LEGAL STANDARD

A.    The Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. See Mathews v. Weber, 423 U.S. 261, 270–71 (1976). The court reviews de novo only those portions of a magistrate judge's report and recommendation to which specific objections[2] are filed, and reviews those portions which are not objected to - including those portions to which only "general and conclusory" objections have been made - for clear error. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983); Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). The court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. See 28 U.S.C. § 636(b)(1).

B.    Motions to Dismiss Generally

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "challenges the legal sufficiency of a complaint." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (citations omitted); see also Republican Party of N.C. v.

---

[2] An objection is specific if it "enables the district judge to focus attention on those issues— factual and legal—that are at the heart of the parties' dispute." One Parcel of Real Prop. Known As 2121 E. 30th St., 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Thomas v. Arn, 474 U.S. 140, 147 (1985)).

<u>Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992) ("A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."). To be legally sufficient a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support her claim and would entitle her to relief. <u>Mylan Labs., Inc. v. Matkari</u>, 7 F.3d 1130, 1134 (4th Cir. 1993). When considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. <u>Ostrzenski v. Seigel</u>, 177 F.3d 245, 251 (4th Cir. 1999); <u>Mylan Labs., Inc.</u>, 7 F.3d at 1134. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u>

C.    <u>Motions to Strike Generally</u>

Rule 12(f) allows a court, acting either on its own or on a motion, to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[3] <u>Id.</u> Generally, such motions "are only granted when the challenged allegations 'have

---

[3] "'Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues." <u>CTH 1 Caregiver v. Owens</u>, C/A No. 8:11-2215-TMC, 2012 WL 2572044, at *5 (D.S.C. July 2, 2012) (citation omitted). "'Scandalous' includes allegations that cast a cruelly derogatory light on a party to other persons." <u>Id.</u> (citation omitted). "The granting of a motion to strike scandalous matter is aimed, in part, at avoiding prejudice to a party by preventing a jury from seeing the offensive matter or giving the allegations any other

no possible relation or logical connection to the subject matter of the controversy' or 'cause some form of significant prejudice to one or more of the parties to the action.'" <u>Moore v. Novo Nordisk, Inc.</u>, C/A No. 1:10-2182-MBS-JRM, 2011 WL 1085650, at *8 (D.S.C. Feb. 10, 2011) (citations omitted). "A motion to strike is a drastic remedy which is disfavored by the courts and infrequently granted." <u>Clark v. Milam</u>, 152 F.R.D. 66, 70 (S.D. W. Va. 1993); <u>see also</u> <u>Waste Mgmt. Holdings, Inc. v. Gilmore</u>, 252 F.3d 316, 347 (4th Cir. 2001) ("Rule 12(f) motions are generally with disfavor 'because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic.'") (quoting 5A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice & Procedure</u> § 1380 (2d ed. 1990)). Moreover, "where there is any question of fact or any substantial question of law, the court should refrain from acting until some later time when these issues can be more appropriately dealt with." <u>United States v. Fairchild Indus., Inc.</u>, 766 F. Supp. 405, 408 (D. Md. 1991).

A Rule 12(f) motion falls within the discretion of the district court. <u>Palmetto Pharm. LLC v. Astrazeneca Pharm. LP</u>, No. 2:11-cv-00807-SB-JDA, 2012 WL 6025756, at *4 (D.S.C. Nov. 6, 2012) (citation omitted); <u>Xerox Corp. v. ImaTek, Inc.</u>, 220 F.R.D. 241, 243 (D. Md. 2003). "When reviewing a motion to strike, 'the court must view the pleading under attack in a light most favorable to the pleader.'" <u>Piontek v. Serv. Ctrs. Corp.</u>, Civil No. PJM 10-1202, 2010 WL 4449419, at *3 (D. Md. Nov. 5, 2010) (citation omitted).

D.     <u>Liberal Construction of Pro Se Complaint</u>

Plaintiff brought this action pro se, which requires the court to liberally construe her pleadings. <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972); <u>Loe v. Armistead</u>, 582 F.2d 1291, 1295 (4th Cir. 1978); <u>Gordon v. Leeke</u>, 574 F.2d

---

unnecessary notoriety inasmuch as, once filed, pleadings generally are public documents and become generally available." <u>Id.</u> (citation omitted).

1147, 1151 (4th Cir. 1978).  Pro se pleadings are held to a less stringent standard than those drafted by attorneys.  Haines, 404 U.S. at 520.  "The mandated liberal construction means . . . that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so."  Mansouri v. Comm'r of Soc. Sec. Admin., C/A No. 8:14-cv-02251-JMC, 2015 WL 5009260, at *3 (D.S.C. Aug. 20, 2015) (citing Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999)).

## IV.    ANALYSIS

### A.    The Report and Recommendation

In the Report and Recommendation, the Magistrate Judge first addressed Defendant's argument that Plaintiff's lawsuit "is barred by the ministerial exception to employment discrimination claims."  (ECF No. 40 at 7.)  Upon her review, the Magistrate Judge observed that she was unable to conclude as a matter of law that Plaintiff's claims were barred because she was a "minister" under the ministerial exception during her employment with Defendant.  (Id. at 8–9.)  The Magistrate Judge next addressed the legal sufficiency of the allegations as to each of Plaintiff's individual claims.  Specifically, the Magistrate Judge determined that Plaintiff's allegations sufficiently supported claims for disparate treatment under Title VII based on race, sex, and national origin; retaliation; and violation of the EPA.  (ECF No. 40 at 10–14.)  The Magistrate Judge then determined that Plaintiff could not state a plausible claim for defamation because Defendant's statements to the EEOC and the SCHAC were privileged.  (Id. at 15–18.)  Finally, as to Defendant's Motion to Strike, the Magistrate Judge was not persuaded that Plaintiff's Title VII allegations occurring before July 15, 2013, needed to be stricken from the Complaint at this time.  (ECF No. 40 at 19.)

Based on the foregoing, the Magistrate Judge recommended granting only Defendant's

Motion to Dismiss Plaintiff's claim for defamation.  (Id. at 20.)

B.    Plaintiff's Objections

Plaintiff objects to the recommendation that the court should dismiss her claim for defamation.  (ECF No. 44.)  Plaintiff argues that her defamation claim should not be dismissed because Defendant intentionally communicated a false, non-privileged statement about her productivity to the EEOC and SCHAC as third parties.  (Id. at 2–3.)  Plaintiff further argues that the communications at issue were not made in good faith and caused her a great deal of emotional distress and damage.  (Id. at 1, 3.)  As a result, Plaintiff requests that she be allowed to proceed with her defamation claim.  (Id. at 4.)

C.    Defendant's Objections

Defendant objects to the Magistrate Judge's recommendation that the court should not dismiss Plaintiff's claims for race, sex, national origin, and pay discrimination and retaliation. (ECF No. 43.)  Defendant argues that the Magistrate Judge "disregarded key allegations that supported dismissal of the lawsuit based on the ministerial exception."  (Id. at 1.)  Specifically, Defendant asserts that it required Plaintiff "to further the spiritual and pastoral mission of the University, and her essential job functions included teaching the gospel, spreading the Christian faith, and participating in worship."  (Id. at 12.)  Moreover, "Plaintiff's employment contract and CIU's Employee Handbook repeatedly referenced . . . [Defendant's] Christian principles and further repeatedly emphasized Plaintiff's role in advancing those principles, as one of her essential job functions."  (Id.)  Based on the foregoing, Defendant contends that the ministerial exception applies to bar Plaintiff's claims and they should be dismissed.  (Id. at 13.)

However, Defendant did not state an objection to the recommendation that its Motion to Strike be denied.

D.    The Court's Ruling

In light of the foregoing authorities and the parties' respective positions, the court

considers each of the parties' respective Objections in turn below.

*1.  Defendant*

In its Objections, Defendant solely argues that Plaintiff's claims asserting violation of

Title VII and the EPA are barred by the ministerial exception and should be dismissed.

Grounded in the First Amendment,[4] the ministerial exception is an affirmative defense[5]

that "operates to exempt from the coverage of various employment laws the employment

relationships between religious institutions and their 'ministers.'" E.E.O.C. v. Roman Catholic

Diocese of Raleigh, N.C., 213 F.3d 795, 800 (4th Cir. 2000) (citations omitted).   "This

constitutionally compelled limitation on civil authority ensures that no branch of secular

government trespasses on the most spiritually intimate grounds of a religious community's

existence." Id.   "[T]he exception shelters certain employment decisions from the scrutiny of

civil authorities so as to preserve the independence of religious institutions in performing their

spiritual functions." Id. at 801.   "Where no spiritual function is involved, the First Amendment

does not stay the application of a generally applicable law such as Title VII to the religious

employer unless Congress so provides." Id.

"The general rule is that 'if the employee's primary duties consist of teaching, spreading

the faith, church governance, supervision of a religious order, or supervision or participation in

---

[4] The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."  U.S. Const. amend. I.

[5] "We conclude that the exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar."   Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C., 132 S. Ct. 694, 709 n.4 (2012).   "That is because the issue presented by the exception is 'whether the allegations the plaintiff makes entitle him to relief,' not whether the court has 'power to hear [the] case.'"  Id. (citation omitted).

religious ritual and worship, he or she should be considered clergy.'" Id. (citing Rayburn v. Gen. Conference of Seventh–Day Adventists, 772 F.2d 1164, 1169 (4th Cir. 1985)).  "A court must therefore 'determine whether a position is important to the spiritual and pastoral mission of the church' in order to decide whether the ministerial exception applies."  Id. (citing Rayburn, 772 F.2d at 1169).

The court observes that an affirmative defense "may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint."  Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993) (citation omitted).  Upon review, the court observes that the face of Plaintiff's Complaint does not establish that she was a ministerial employee.  In this regard, the Complaint's allegations do not describe Plaintiff's duties as involving "spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship."  Rayburn, 772 F.2d at 1169. Therefore, the court agrees with the Magistrate Judge (ECF No. 40 at 8–9) and finds that the ministerial exception does not at this time bar Plaintiff's claims asserting violation of Title VII and the EPA.   Accordingly, Defendant's Objections to the Report and Recommendation are overruled.

   *2.  Plaintiff*

Plaintiff objects to the Magistrate Judge's determination that the defamation claim should be dismissed because Defendant had either an absolute or qualified privilege to communicate with the EEOC and the SCHAC.

The court observes that under South Carolina law, "an 'absolute privilege exists as to any utterance arising out of the judicial proceeding and having any reasonable relation to it, including preliminary steps leading to judicial action of any official nature provided those steps bear

reasonable relation to it.'" <u>Zeiny v. Wash. Safety Mgmt. Sols., LLC</u>, Civil Action No. 1:09-2821-TLW-JRM, 2012 WL 1098209, at *17 (D.S.C. Mar. 2, 2012) (quoting <u>Crowell v. Herring</u>, 392 S.E.2d 464, 467 (S.C. Ct. App. 1990)). Moreover, a South Carolina appellate court considered the privilege issue in the context of employer communications with the SCHAC and determined that such disclosure of information is absolutely privileged. <u>See</u> <u>Williams v. Force Prot. Indus., Inc.</u>, Appellate Case No. 2010-169467, 2012 WL 10844374, at *1 (S.C. Ct. App. June 20, 2012) ("We find no error in the trial court's ruling Respondents' statements to the South Carolina Human Affairs Commission (SCHAC) were privileged.") (citing, <u>e.g.</u>, <u>Crowell</u>, 392 S.E.2d at 467); <u>cf.</u> S.C. Code Ann. § 41-27-560 (2016) (statute providing absolute privilege to statements provided by an employer to the South Carolina Employment Security Commission). Based on the foregoing, the court finds that any statements made by Defendant to either the EEOC or the SCHAC during their investigation enjoy an absolute privilege under South Carolina law. Therefore, the court agrees with the Magistrate Judge (ECF No. 40 at 15) and concludes that Plaintiff's claim for defamation is not actionable. Accordingly, Plaintiff's Objection to the Report and Recommendation is overruled.

## V.    CONCLUSION

Upon careful consideration of the entire record, the court hereby **GRANTS IN PART AND DENIES IN PART** the Motion to Dismiss of Defendant Columbia International University. (ECF No. 20.) The court **DENIES** the Motion to Dismiss as to Plaintiff's claims for race, sex, national origin, and pay discrimination and retaliation. The court **GRANTS** the Motion to Dismiss as to Plaintiff's state law claim for defamation. In addition, the court **DENIES** Defendant's Motion to Strike. (ECF No. 20.) The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 40) and incorporates it herein by reference.

**IT IS SO ORDERED.**

J. Michelle Childs

United States District Judge

September 26, 2016
Columbia, South Carolina