IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Lishu Yin, | Civil Action No.: 3:15-cv-03656-JMC |
| Plaintiff, | |
| v. | |
| Columbia International University, | **ORDER AND OPINION** |
| Defendant. | |

This case is before the court on Columbia International University's ("Defendant") Motion for Certification of an Issue for Interlocutory Appeal under 28 U.S.C. § 1292(b). (ECF No. 71.) In the alternative, Defendant, pursuant to Federal Rule of Civil Procedure 59(e), moves for reconsideration of this court's September 26, 2016 order (ECF No. 66) denying Defendant's Motion to Dismiss *pro se* Plaintiff Lishu Yin's ("Plaintiff") federal claims for discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII,") 42 U.S.C. § 2000e, et. seq. and pay discrimination in violation of the Equal Pay Act of 1963 ("EPA,") 29 U.S.C. § 206(d). (*Id.*) Plaintiff opposes Defendant's Motion to Reconsider. (ECF No. 84.) For the reasons stated herein, the court **DENIES** Defendant's Motion for Certification of an Issue for Interlocutory Appeal and **DENIES** Defendant's Motion to Reconsider.

### I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed her Complaint in this court *pro se* on September 11, 2015. (ECF No. 1.) Plaintiff alleges that Defendant discriminated and retaliated against her on the basis of race, sex, and national origin under Title VII. (*Id.* at 4, 36.) Plaintiff also alleges a claim of pay discrimination under the EPA (*Id.*), and defamation under state law. (*Id.* at 36.) On November 9,

1

2015, Defendant filed a Motion to Dismiss for Failure to State a Claim pursuant to Fed. R. Civ. P. 12(b)(6) and/or to Strike pursuant to Fed. R. Civ. P. 12(f).  (ECF No. 20.)  On April 11, 2016, Magistrate Judge Paige Gossett issued a Report and Recommendation ("Report") granting Defendant's Motion to Dismiss Plaintiff's defamation claim, and denying Defendant's Motion to Dismiss Plaintiff's federal claims and its Motion to Strike Plaintiff's allegedly untimely allegations.  (ECF No. 40.)  On September 26, 2016, after proper objections were filed by both Plaintiff and Defendant to the Magistrate Judge's Report (ECF Nos. 43, 44), this court entered an order adopting the Magistrate Judge's Report.  (ECF No. 66.)

On October 24, 2016, Defendant filed its Motion for Certification of an Issue for Interlocutory Appeal under 28 U.S.C. § 1292(b) or, in the Alternative, Motion to Reconsider under Fed. R. Civ. P. 59(e), stating that Plaintiff was a minister, thus barring her federal claims under the ministerial exception.[1]  (ECF No. 71.)  On November 10, 2016, Plaintiff filed a Response in Opposition to Defendant's Motion for Certification of an Issue for Interlocutory Appeal or, in the Alternative, Motion to Reconsider, denying among other things that she is a "minister" thus making the "ministerial exception" inapplicable.  (ECF No. 84.)  Defendant replied to Plaintiff's response in opposition, reaffirming the facts and law that were present in its original Motion (ECF

---

[1] *See Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188, 190 (2012) (recognizing the existence of a "ministerial exception," grounded in the First Amendment, that "precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers," and holding that "[t]he ministerial exception is not limited to the head of a religious congregation"); *see also E.E.O.C. v. Roman Catholic Diocese of Raleigh, N.C.*, 213 F.3d 795, 800 (4th Cir. 2000) ("[t]he ministerial exception operates to exempt from the coverage of various employment laws the employment relationships between religious institutions and their 'ministers.'"); *Hosanna-Tabor*, 565 U.S. at 198 n.1 (Alito, J., joined by Kagan, J., concurring) (identifying the antidiscrimination laws "that are often implicated in cases involving the [ministerial] exception" as: 42 U.S.C. § 2000e(f) (Title VII); § 12111(4) (ADA) (2012); 29 U.S.C. § 630(f) (ADEA); and § 206(e) (Equal Pay Act and Fair Labor Standards Act), and noting that "Protestant ministers, Catholic priests, and Jewish rabbis" clearly fall within the ministerial exception).

2

Nos. 71, 71-1).  (ECF No. 95.)  On July 20 and July 28, 2017, Defendant filed Supplemental Authorities in Support of its Motion for Reconsideration.  (ECF Nos. 110, 114.)  On July 25 and August 1, 2017, Plaintiff filed Memoranda in Opposition.  (ECF Nos. 111, 115.)

## II.     JURISDICTION

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.  Plaintiff alleges claims under Title VII and the EPA, thus, Plaintiff's claims arise under the laws or Constitution of the United States and jurisdiction is proper.

## III.    LEGAL STANDARD

a. <u>Interlocutory Appeal Under 28 U.S.C. § 1292(b)</u>

In civil actions, a party may only appeal from final orders and certain limited interlocutory and collateral orders of the district courts.  *See* 28 U.S.C. §§ 1291, 1292; *see also Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545 (1949).  This limitation "advances the important interest of avoiding piecemeal review of ongoing district court proceedings," which "would not only delay the ultimate resolution of disputes by spawning multiple appeals," but would also "undermine the independence of the district judge."  *MDK, Inc. v. Mike's Train House, Inc.,* 27 F.3d 116, 119 (4th Cir. 1994) (citations omitted).

A district court may certify an order to the Court of Appeals for interlocutory review under 28 U.S.C. § 1292(b) when the district judge believes that the order involves "a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  *See Swint v. Chambers Cty. Comm'n,* 514 U.S. 35, 37 (1995) (". . . 28 U.S.C. § 1292(b) confers on district courts, first line discretion to certify for immediate appeal interlocutory orders deemed pivotal and debatable . . .")

3

    b.   Reconsideration Pursuant to Fed. R. Civ. P. 59(e)

Under Fed. R. Civ. P. 59(e), a court may "alter or amend the judgment if the movant shows either (1) an intervening change in the controlling law, (2) new evidence that was not available at trial, or (3) that there has been a clear error of law or a manifest injustice." *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 407 (4th Cir. 2010) (citation omitted). It is the moving party's burden to establish one of these three grounds in order to obtain relief under this rule. *Loren Data Corp. v. GXS, Inc.*, 501 Fed. App'x 275, 285 (4th Cir. 2012). The decision whether to reconsider an order pursuant to this rule is within the discretion of the district court. *See Hughes v. Bedsole*, 48 F.3d 1376, 1382 (4th Cir. 1995).

## IV.    ANALYSIS

    a.   Motion for Certification of an Order for Interlocutory Appeal under 28 U.S.C. § 1292(b)

Pursuant to section 1292(b), Defendant seeks to certify to the United States Court of Appeals for the Fourth Circuit for interlocutory review the court's order declining to apply the ministerial exception to this case. The court finds that certifying this order is improper because it does not dispute Defendant's contention below:

> [T]he [ministerial] exception is a threshold question to be decided at the earliest possible stage in the litigation by reviewing all available pleadings to determine if the exception applies as a matter of law. (ECF No. 71-1 at 3.)

Under section 1292(b), there must be a "controlling question of law as to which there is substantial ground for difference of opinion" in order for this court to certify an order for interlocutory appeal. In adopting the Magistrate Judge's Report, the court noted that Defendant

4

has the right to raise an affirmative defense[2] under a Fed. R. Civ. P. 12(b)(6) motion, but, "[on] the face of Plaintiff's [C]omplaint, [it] does not establish that she was a ministerial employee . . . [and thus] Defendant's defense would not bar suit *at this time*." (ECF No. 66 at 12.) Moreover, the Magistrate Judge's Report did not find that the ministerial exception would never apply in this case, stating in a footnote, that "[t]he [c]ourt notes that with a more fully developed factual record, the application of the ministerial exception may be revisited." (ECF No. 40 at 9 n.2.)

In *Hosanna-Tabor Evangelical Lutheran Church and School v. E.E.O.C.*, 565 U.S. 171 (2012), the United States Supreme Court upheld the district court's grant of summary judgment in favor of the defendant church. The Court recognized for the first time the existence of the "ministerial exception," which is grounded in the First Amendment and "precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers." *Id.* at 188. The Court summarized, "[t]he case before us is an employment discrimination suit brought on behalf of a minister, challenging her church's decision to fire her. Today we hold only that the ministerial exception bars such a suit." *Id.* at 196.

There is no disagreement with Defendant's contention that the ministerial exception would apply, if Plaintiff is an employee falling within the ministerial exception. Therefore, since there is no controlling question of law on which there is a substantial difference of opinion, i.e., the applicability of the ministerial exception to employment relationships between religious institutions and their ministers, there is no need to certify the September 26, 2016 order for this purpose.

---

[2] *See Hosanna-Tabor,* 565 U.S. at 195 n.4 ("[Court] concludes that the [ministerial] exception operates as an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar.")

b.  Motion to Reconsider Pursuant to Fed. R. Civ. P. 59(e)

Defendant does not suggest that there has been a change in intervening law, nor does it present new evidence or suggest that there has been a manifest injustice. Instead, Defendant challenges the court's order on the basis that the court made a clear error of law. (ECF No. 71-1 at 4.) Defendant asserts that the court made a clear error of law in not finding that its affirmative defense, the ministerial exception, bars this lawsuit, because the court should have found that the University is a "ministry" and Plaintiff is a "minister" at this stage in the lawsuit. (*Id.*) More specifically, Defendant objects to the following finding in the court's order:

> The court observes that an affirmative defense "may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint." *Richmond, Fredericksburg & Potomac R.R. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) (citations omitted). Upon review, the court observes that the face of Plaintiff's Complaint does not establish that she was a ministerial employee. In this regard, the Complaint's allegations do not describe Plaintiff's duties as involving "spreading the faith, church governance, supervision of a religious order, or supervision or participation in religious ritual and worship." *Rayburn*, 772 F.2d at 1169. Therefore, the court agrees with the Magistrate Judge (ECF No. 40 at 8–9) and finds that the ministerial exception does not at this time bar Plaintiff's claims asserting violation of Title VII and the EPA.

(ECF No. 66 at 12.)

Relying solely on the allegations of the Complaint, the court determined that Plaintiff had not pled facts that align her with the role of a minister. In her Complaint, Plaintiff alleges that she was hired as a "full-time resident faculty member" in the Masters of Teaching English as a Foreign Language (TEFL) program based on her credentials in both education and TEFL. (ECF No. 1 at 4, 8 ¶ 1.) Plaintiff alleges that she taught classes in the College of Education and served as the major professor of TESOL (Teaching English to Speakers of Other Languages). (*Id.* at 10 ¶ 5.) Plaintiff further alleges that, on or about February 27, 2012, she signed a contract for the 2012-2013 school year with Defendant. (*Id.* at ¶ 6); *see also* (ECF 1-2 at 44.)   Additionally, Plaintiff

6

alleges that she signed a different contract for the 2013-2014 school year. (*Id*. at 12 ¶ 11.); *see also* (ECF No. 1-2 at 50-53.)

Defendant, to the contrary, relies on exhibits attached to Plaintiff's Complaint as demonstrative of Plaintiff's ministerial capacity. (ECF Nos. 20-1 at 3-4, 14; 71-1 at 11, 14-17.) Defendant particularly relies on Plaintiff's 2013-2014 employment contract. (ECF No. 1-2 at 50-53.) Federal Rule of Civil Procedure 10(c) states "a copy of a *written instrument* that is an exhibit to a pleading is a part of the pleading for all purposes." (emphasis added). The Fourth Circuit has not clearly defined what constitutes a "written instrument," but considers contracts to be a category of written instrument. *See Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr. Inc.,* 7 F. App'x 197, 205 (4th Cir. 2001) ("[w]e conclude that JMB "pled itself out of a claim" by attaching the several contract documents to its complaint [and after the district court reviewed them] . . . properly found that [Plaintiff] failed to state a claim.") Other Courts of Appeals have given or adopted a definition of written instrument. *See, e.g., Smith v. Hogan,* 794 F.3d 249, 254 (2d Cir. 2015), *cert. denied*, 137 S. Ct. 566 (2016) (court agreed that plaintiff's affidavit was not a written instrument because it was not "a document evidencing legal rights or duties or giving formal expression to a legal act or agreement"); *Rose v. Bartle,* 871 F.2d 331, 339 n.3 (3d Cir. 1989) ("the types of exhibits incorporated within the pleadings by Rule 10(c) consist largely of documentary evidence, specifically contracts, notes, and other writing[s] on which [a party's] action or defense is based.")

In its Motion to Dismiss (ECF No. 20), Defendant asserts an affirmative defense that the ministerial exception bars Plaintiff's claim for employment discrimination, retaliation, and pay discrimination, because she is an employee covered by the ministerial exception, based in part on Plaintiff's 2013-2014 employment contract. (ECF No. 20-1 at 3-4, 14.)

7

A defendant may raise an affirmative defense as long as all of the facts necessary for the defense appear on the face of the complaint. *See Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007); *see also Demetry v. Lasko Prod., Inc.,* 284 F. App'x 14, 15–16 (4th Cir. 2008) (emphasis added) ("[a] recall notice was part of Demetry's complaint for all purposes, and established, . . . a fact necessary to establish Lasko's affirmative defense [thus the district court was proper in considering it].") Plaintiff's employment contracts are written instruments and a part of the pleadings for all purposes and thus when making the determination of whether all necessary facts for the affirmative defense are present, the court may consider it. *See* Fed. R. Civ. P. 10(c). Neither the Magistrate Judge, nor this court considered the exhibits attached to Plaintiff's Complaint, including her employment contracts, to determine whether the ministerial exception would apply. The court finds that it should have considered Plaintiff's employment contracts, in deciding Defendant's Motion to Dismiss and does so now.

The Supreme Court in *Hosanna-Tabor,* 565 U.S. 190-92 (2012), outlined criterion to determine whether an employee fits within the ministerial exception, considering the title of the position, the "substance reflected in that title," the qualifications one needs for the job, and the "important religious functions" an employee performs. The Court declined "to adopt a rigid formula for deciding when an employee qualifies as a minister." *Id.* at 190. Instead, the Court only held that "the exception covers [plaintiff] given all the circumstances of her employment." *Id.* The Fourth Circuit, in recognizing the ministerial exception, declared that the ministerial exception covers employees "whose duties consist of teaching, spreading the faith, church governance . . . or supervision or participation in religious ritual and worship." *Rayburn v. Gen. Conference of Seventh-Day Adventists*, 772 F.2d 1164, 1169 (4th Cir. 1985).

8

Defendant provides the court with two cases, *Grussgott v. Milwaukee Jewish Day Sch. Inc.,* No. 16-CV-1245-JPS, 2017 WL 2345573 (E.D. Wis. May 30, 2017) and *Fratello v. Archdiocese of N.Y.*, 863 F.3d 190 (2d Cir. 2017) that supplement its Motion for Reconsideration and exemplify how courts have utilized the Supreme Court's findings in *Hosanna-Tabor*. (ECF Nos. 110, 114.) Both of these cases were decided on summary judgment after limited discovery as to the question of whether plaintiffs were ministers within the meaning of the ministerial exception. *Fratello*, 863 F.3d at 198; *Grussgott*, 2017 WL 2345573, at *1. Both cases were decided in favor of the defendant religious institutions. In *Grussgott* the court reviewed the "duties and functions" of the plaintiff's position as an elementary school teacher, and determined that because she taught Judaism to schoolchildren, including teaching them prayers, studying the Torah, and following the Tal Am program, a Hebrew Language Arts and Jewish Studies program http://www.talam.org/about.html (last visited September 28, 2017), the plaintiff performed an important role in "transmitting the Jewish faith" to the next generation. 2017 WL 2345573, at *5 (citing *Hosanna-Tabor,* 565 U.S. at 192.) The court stated that this was a "close case" but the "unmistakable religious dimension" to the plaintiff's role subjected her to the ministerial exception. *Id.* at *7.

The plaintiff in *Fratello* was a principal of a Roman Catholic school and the court found that because she had to complete a number of requirements including, "catechist" certification, proficiency in a number of religious areas, exercising "spiritual leadership" to ensure a thriving Catholic school community, among others, all helped her to provide "Catholic leadership" to the students, faculty and community. 863 F.3d at 208. The court found that these factors tilt in favor of the plaintiff being a minister within the ministerial exception. *Id.* Moreover, the court found in the record that the plaintiff in accepting the role of principal knew that she would be perceived as

9

a "religious leader." *Id.* The court focused heavily on the religious functions that the plaintiff performed, including leading daily prayer, encouraging and supervising teachers' integration of religious values into their lessons and classrooms, and keeping families connected to their student's "religious and spiritual development," among other functions. *Id.* at 209. The court found this to weigh strongly in favor of applying the ministerial exception. *Id.* However, the court was able to determine this from the record that was before them on summary judgment. The district court could not determine whether the ministerial exception applied to the plaintiff at the motion to dismiss stage and needed more information as to the extent of plaintiff's ministerial capacity, thus granting limited discovery. *Fratello,* 863 F.3d at 198 (the court of appeals found that limited discovery was appropriate).

Here, Plaintiff alleges that Defendant is "a private, faith-based evangelical Christian institution." (ECF No. 1 at 4.) Such institutions are considered as religious institutions covered by the ministerial exception. *Shaliehsabou v. Hebrew Home of Greater Washington, Inc.*, 363 F.3d 299, 310 (4th Cir. 2004) (". . . we conclude that a religiously affiliated entity is a 'religious institution' for purposes of the ministerial exception whenever that entity's mission is marked by clear or obvious religious characteristics.") Plaintiff's contracts reveal some of Defendant's religious characteristics such as affirming that the doctrinal standards of the University express Plaintiff's conviction of Christian truth (ECF No. 1-2 at 44) or the mandatory "religious doctrinal and lifestyle requirements and practices" that faculty must abide by. (*Id.* at 51 ¶ 4.3.)

While Plaintiff's employment contracts do not specify she is a minister; they do describe her as an "associate professor" and "faculty of the ministry." (*Id.* at 44, 50.) In Plaintiff's 2012-2013 contract, she agrees that she has read the employee handbook, assigned portions of the "Educational Philosophy and Responsibilities Guide," the "Biblical and Ministry Standards," as

well as those portions of the catalog relevant to "her ministry." (*Id.* at 44.) In this contract, she also affirms that "the doctrinal standards of the University . . . express [her] own conviction of Christian truth." (*Id.*) The 2013-2014 contract states, in part, that the faculty member is to abide by the policies and procedures of the Ministry. (*Id.* at 50.) This contract further states in paragraph 4.3, that the faculty member understands that "the Ministry, as a religious institution is, under state and federal law, exempt from certain statutory requirements concerning discrimination and is thereby permitted to make hiring and other employment decisions based or [sic] religious tenets (Title VII, 42 U.S.C. § 2000(e)." (*Id.* at 51). Paragraph 4.3 also states that it is important for faculty "to provide religious leadership for students by instruction and example." (*Id.*) Additionally, the contract states that "religious doctrinal and lifestyle requirements and practices are bona fide occupational qualifications (BFOQ) of employment as permitted under Title VII, 42 U.S.C. § 2000e-2(e)(1),"[3] including being a born-again Christian believer and being faithfully involved in an evangelical Protestant church whose beliefs and practices are consistent with the Ministry's (Defendant) positions. (*Id.* at ¶¶ 4.3, 4.3.1)

Upon review of Plaintiff's Complaint and employment contracts, the court finds that there are not enough facts to establish that Plaintiff qualifies as a minister under the ministerial exception. At this juncture in the litigation, the allegations and documents establish that Plaintiff was a faculty member at a religious institution who taught education and TESOL, not religious

---

[3] "it shall not be an unlawful employment practice for an employer to hire and employ employees, for an employment agency to classify, or refer for employment any individual, for a labor organization to classify its membership or to classify or refer for employment any individual, or for an employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining programs to admit or employ any individual in any such program, on the basis of his religion, sex, or national origin in those certain instances where religion, sex, or national origin is a *bona fide occupational qualification* reasonably necessary to the normal operation of that particular business or enterprise." 42 U.S.C. § 2000e-2(e)(1) (emphasis added).

topics as in *Grussgott*.  *See also E.E.O.C. v. Catholic Univ. of Am.,* 83 F.3d 455, 465 (D.C. Cir. 1996) (applying the ministerial exception to a member of an ecclesiastical faculty who instructed students in the "fundamental body of ecclesiastical laws.")  Additionally, *Grussgott, Fratello* and *Hosanna-Tabor*, all were decided by summary judgment, which allows for a more thorough record, unlike a motion to dismiss.

## V.     CONCLUSION

For the aforementioned reasons, the court **DENIES** Defendant's Motion for Certification of an Issue for Interlocutory Appeal under 28 U.S.C. § 1292(b) and **DENIES** Defendant's Motion to Reconsider under Federal Rule of Civil Procedure 59(e).

Accordingly, this matter is referred to United States Magistrate Judge Paige J. Gossett for the purpose of developing a scheduling order allowing the parties to conduct limited discovery to determine whether the ministerial exception applied to Plaintiff while employed with Defendant.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Judge

September 28, 2017
Columbia, South Carolina